IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:16-CR-00019-05 |
| v. | (Chief Judge Brann) |
| SHARONDA ROSALIE WALKER, | |
| Defendant. | |

MEMORANDUM OPINION

JANUARY 12, 2022

## I.     BACKGROUND

In 2016, Sharonda Rosalie Walker was indicted in a second superseding indictment for conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846.[1] Walker later pled guilty, pursuant to a written plea agreement, to that charge.[2] As part of the plea agreement, the parties agreed to recommend that Walker was responsible for distributing or possessing with the intent to distribute at least one, but less than three, kilograms of heroin.[3]

At the guilty plea hearing, the Government set forth the facts that it would have presented to support the charge against Walker. The Government stated that "Walker, Keith Harding, Eric Harding, Eric Jackson, Troy Brown, Kalif English, Shakeen Taylor, and conspirators known to the grand jury, managed the other co-

---
[1]   Doc. 362.
[2]   Doc. 1046.
[3]   *Id.* at 9.

defendants in crews that used seven separate cell phones, or traps, to supply drug customers with heroin."[4] The drug trafficking organization responded to heroin orders in and around Williamsport and Bloomsburg, Pennsylvania, as well as other communities along Interstate 80.[5] When the organization would sell out of heroin, they would stop responding to customer calls, travel to Philadelphia to purchase more heroin, and would then send out a mass text message to their customers stating that the organization again had heroin to sell; these messages were usually sent by Walker.[6]

During the conspiracy, Walker not only sold heroin but, along with Jackson, English, and Keith Harding, "managed the operation of customer cell phones known as traps. Heroin customers called the cell phones and were directed by Walker and the other conspirators to various meeting locations in the Williamsport region."[7] Walker and others in the conspiracy would drive to these locations to deliver heroin to the customers who had ordered heroin through the trap phones.[8]

The conspirators "stored heroin at a house in Newberry, and then at Rhoads Alley in Williamsport, two locations where Walker resided. After she and Keith Harding had a disagreement concerning Harding's girlfriend, Walker began supplying the common customer network with a crew of drug sellers which

---

[4] Doc. 1417 at 19.
[5] *Id.*
[6] *Id.* at 19, 22.
[7] *Id.* at 20.
[8] *Id.* at 20-21.

included" several codefendants and "young bulls."[9] The Government asserted that "Walker and Jackson operated one of the trap phones together, and using that phone sold an average of six to ten racks per day, typically between the hours of 8:00 a.m. to 8:00 p.m." and "bagged heroin into small packets for distribution."[10]

After the arrest of certain coconspirators and the seizure of their trap phones, Walker switched the trap phone that she was using and transferred the heroin customer contact list to new cell phones.[11] She "also alerted other co-defendants when the police pulled over co-conspirators, and recovered phones used to sell heroin. Walker also forwarded calls from the trap cell phones called by heroin customers to the cell phones of other co-defendants."[12]

The Government asserted that Walker generated significant income from her involvement in the conspiracy:

> Walker generated a substantial amount of cash proceeds from sales of heroin from the trap phones that she operated. Bank records revealed that she deposited and withdrew in excess of $60,000 at various ATM locations in the Williamsport and Philadelphia areas during the 2012-2015 time range.
>
> She also purchased multiple luxury vehicles with drug proceeds including a BMW 645 coupe, a black BMW X5, a blue BMW, and an Audi A8. Walker also obtained a blue mini-van and Buick, both equipped with hidden compartments to hold heroin supplies.[13]

---

[9]   *Id.* at 21.
[10]  *Id.* at 21-22.
[11]  *Id.* at 22.
[12]  *Id.*
[13]  *Id.* at 23.

The Government further stated that, during the 2015-to-2016-time frame, several coconspirators were arrested, which led Walker to converse with English about the arrests "and the fact that they were both the subject of police surveillance."[14] "Walker and English also discussed the return of indictments in this case, based on their review of the, quote, middle town Harrisburg field office, closed quote, of the federal authorities" and "discussed various individuals who were arrested and likely to cooperate with investigators."[15] Walker had similar conversations with Eric Jackson, and informed him of a number of indictments and arrests that had occurred, stating that "the State Police had been, quote, sewing up, closed quote, the highways, and the federal investigators were trying to crack the co-defendants in an effort to gain cooperation."[16] Walker agreed with the factual recitation provided by the Government, with the exception of any discussion related to the possession of firearms.[17]

This Court ultimately accepted the guilty plea, and a Presentence Report (PSR) was prepared.[18] The PSR calculated a base offense level of 30, but added two levels for possessing firearms, two levels for maintaining a premises for the purposes of distributing a controlled substance, two levels for committing the offense as part of a pattern of criminal conduct engaged in as part of a livelihood, and four levels

---

[14] *Id.* at 24.
[15] *Id.* at 24-25.
[16] *Id.* at 25.
[17] *Id.* at 26-28.
[18] Docs. 1066, 1272.

for being the leader or organizer of criminal activity that involved five or more participants—resulting in an offense level of 40.[19] The PSR reduced the offense level by three for acceptance of responsibility, for a total offense level of 37.[20] The PSR calculated a criminal history category I which, when combined with an offense level 37, resulted in a Sentencing Guidelines range of 210 to 262 months' imprisonment.[21]

Walker's attorney lodged several objections to the PSR and objected to all four enhancements applied by the PSR.[22] As to the firearm enhancement, Walker's attorney argued that the Government could not establish that Walker possessed a firearm in relation to the charged conduct and, with respect to the enhancement for maintaining a premises, could not establish that any premises were maintained for the purpose of distributing controlled substances.[23]

Counsel further argued that the enhancement for earning a livelihood from selling controlled substances was unwarranted, as Walker had legitimate jobs during the existence of the conspiracy and the Government therefore could not demonstrate that any illegitimate earnings "exceeded the amount referenced in USSG § 4B1.3 definition of criminal livelihood."[24] Finally, Walker's attorney objected to the enhancement for being a leader or organizer of criminal activity, arguing that there

---

[19] Doc. 1272 at 13; U.S. Sentencing Guidelines Manual §§ 2D1.1(b)(1), (b)(12), (b)(16)(E), 3B1.1(a).
[20] Doc. 1272 at 13-14; USSG § 3E1.1.
[21] Doc. 1272 at 14, 18.
[22] Doc. 1273.
[23] Id. at 6.
[24] Id.

was no evidence that Walker exercised decision-making control over the offense, recruited others, or led the organization in any other way; rather, counsel asserted, Walker was a manager or supervisor subject to only a three-level enhancement.[25]

At sentencing, the Court sustained Walker's objection to the enhancement for maintaining a premises for the purpose of distributing a controlled substance.[26] This Court concluded that there was insufficient evidence to find that Walker had maintained the identified premises for the primary purpose of distributing controlled substances.[27]

The Court overruled, however, Walker's objection to the firearm enhancement.[28] The Court noted that such an enhancement "should be applied if the weapon was present unless it is clearly improbable that the weapon was connected with the offense," and that the Government "need only prove that the defendant possessed the weapon during the currency of the offense, not necessarily that he actually used it in perpetrating the crime or that he intended to do so."[29] This Court concluded that the evidence established by a preponderance of the evidence that the enhancement applied to Walker.

The Court recounted that "police recovered, after searches pursuant to warrants, three firearms in two of Ms. Walker's residences," including a silver and

---

[25] *Id.* at 7.
[26] Sentencing Transcript at 36.
[27] *Id.* at 36-37.
[28] *Id.* at 32.
[29] *Id.* at 32-33.

black .40 caliber Smith & Wesson semi-automatic handgun, and a Ruger .357 magnum revolver that was fully loaded.[30] In one of Walker's other residences, police also recovered a .22 caliber Derringer.[31] Moreover, Walker's Twitter posts acknowledged possessing firearms, and multiple witnesses made statements about Walker possessing firearms, including during an incident where Walker discharged a firearm toward a home.[32]

As to the four-level enhancement for being a leader or organizer of criminal activity that included five or more people, the Court overruled Walker's objection[33] and determined that "Walker was an extensive participant in this conspiracy, sufficient to qualify as a leader or organizer."[34] Walker "had the knowledge of when new supplies of heroin were available," was responsible for the customer list so that she could send mass text messages to the customer base to notify them of new supplies, and had knowledge of when co-defendants were arrested and phones seized and would notify her coconspirators about those events.[35] Walker continued to supply customers through trap phones even after the arrest of her coconspirator Keith Harding.[36]

---

[30] *Id.* at 34.
[31] *Id.* at 35.
[32] *Id.* at 35-36.
[33] *Id.* at 38.
[34] *Id.* at 39.
[35] *Id.*
[36] *Id.*

The Court also found it significant that Walker discussed police surveillance and the arrests of coconspirators with other leaders of the conspiracy—those leaders being English and Jackson.[37] These conversations were significant because they demonstrated Walker's "level of planning, organizing, and control of this offense."[38]

Importantly, "Walker's own Twitter posts belie[d] her contention that she was something less than an organizer or leader and was a mere middle manager."[39] Those posts included statements such as "I knew I was a leader when I started to see how many followers I had," "Got ya family members on my payroll," "Made myself a boss," "Bosses don't talk, they just sit back and listen," and "I employ *expletives*."[40] These facts led the Court to conclude that an enhancement for being a leader or organizer of criminal activity that included five or more people was appropriate.[41] Finally, the Court overruled Walker's objection to an enhancement for having committed the offense as part of a pattern of criminal conduct engaged in as a livelihood.[42]

As a result of the Court's rulings, Walker's offense level was 35 and her criminal history category was I, resulting in a Sentencing Guidelines range of 168 to 210 months' imprisonment.[43] Walker's attorney argued that a downward variance

---

[37] *Id.* at 40.
[38] *Id.*
[39] *Id.*
[40] *Id.* at 40-41.
[41] *Id.* at 41.
[42] *Id.* at 41-44.
[43] *Id.* at 44-45.

was appropriate in light of the relevant 18 U.S.C. § 3553(a) sentencing factors.[44] After hearing from the parties, the Court imposed a sentence of 168 months' imprisonment.[45] That sentence was driven largely by the seriousness of Walker's crime of conviction and the devastating impact that heroin has on communities.[46]

Walker thereafter filed an appeal with the United States Court of Appeals for the Third Circuit.[47] On appeal, Walker argued that this Court erred in applying a sentencing enhancement for being a leader or organizer of the drug trafficking conspiracy.[48] The Third Circuit rejected Walker's argument and determined that this "Court properly found that Walker was an organizer or leader of the scheme."[49] That conclusion was based on evidence that Walker "directed a 'distribution franchise' of at least eight coconspirators who sold heroin to her trap-phone contacts," "reaped a larger share of the network's proceeds because she owned a fleet of at least four luxury cars," and made social media posts that "reinforce the other evidence of her leadership role."[50] The Third Circuit, in dicta, also noted that this Court "properly enhanced [Walker's] Guidelines ranges for . . . possessing guns" as she "sometimes carried guns."[51]

---

[44] Doc. 1358 at 6-12.
[45] Sentencing Transcript at 66.
[46] *Id.* at 63-66.
[47] Doc. 1404.
[48] *United States v. English*, 804 F. App'x 144, 145 (3d Cir. 2020).
[49] *Id.* at 147.
[50] *Id.*
[51] *Id.* at 148.

In 2020, Walker filed this timely 28 U.S.C. § 2255 motion challenging the sentence imposed based upon allegations of ineffective assistance of appellate counsel.[52] First, Walker asserts that her appellate attorney was ineffective for failing to inform Walker of her right to file a *pro se* petition for a writ of certiorari with the United States Supreme Court, wherein she would have challenged her sentencing enhancement for being a leader or organizer of the conspiracy.[53] Second, Walker argues that appellate counsel was ineffective for failing to challenge on appeal the application of the enhancement for possessing a dangerous weapon, and for failing to argue that she was eligible for a safety valve adjustment under USSG § 5C1.2(a).[54]

The Government has responded to Walker's § 2255 motion and asserts that Walker did not receive ineffective assistance of appellate counsel.[55] The Government first asserts that appellate counsel was not ineffective for failing to raise issues related to the firearm enhancement or safety valve on appeal since such arguments are meritless.[56] The Government further argues that she was not denied effective assistance of appellate counsel based on the failure to inform her of her right to file a petition for a writ of certiorari, as she suffered no prejudice from this purported failure.[57] Finally, regardless of whether Walker suffered prejudice, the Government contends that appellate counsel made a reasonable decision to pursue a

---

[52] Docs. 1517, 1518.
[53] Doc. 1518 at 2-3.
[54] *Id.* at 3-6.
[55] Doc. 1541.
[56] *Id.* at 20-23.
[57] *Id.* at 23-26.

more meritorious argument on appeal, and therefore did not perform deficiently.[58] This matter is now ripe for disposition and, for the following reasons, the Court will deny Walker's motion.

## II. DISCUSSION

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[59] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[60] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[61] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[62]

With regard to appellate counsel, "[a] lawyer performs deficiently when there is simply no rational basis to believe that counsel's failure to argue [an] issue on

---

[58] *Id.* at 26-28.
[59] *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).
[60] *Id.* (quoting *Strickland*, 466 U.S. at 687).
[61] *Strickland*, 466 U.S. at 690.
[62] *Id.*

11

appeal was a strategic choice."[63] However, "appellate counsel . . . need not (and should not) raise every nonfrivolous claim [on appeal], but rather may select from among them in order to maximize the likelihood of success on appeal."[64] As the Supreme Court has explained, "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy."[65] Consequently, as a general rule, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."[66]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[67] With respect to appeals, such prejudice is established only if "there is reasonable probability—a probability sufficient to undermine confidence in the outcome, but less than a preponderance of the evidence—that [the defendant's] appeal would have prevailed had counsel's performance satisfied constitutional requirements."[68]

---

[63] *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 763 (3d Cir. 2018).
[64] *Smith v. Robbins*, 528 U.S. 259, 288 (2000).
[65] *Jones v. Barnes*, 463 U.S. 745, 754 (1983).
[66] *Robbins*, 528 U.S. at 288 (internal quotation marks omitted).
[67] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[68] *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

## A. Issues Related to the Filing of a Petition for a Writ of Certiorari

With respect to Walker's claim that she received ineffective assistance of appellate counsel based upon counsel's purported failure to inform Walker of her right to petition the Supreme Court, the Court rejects this contention.[69] Even assuming that counsel performed deficiently by failing to inform Walker of her right to file a *pro se* petition for a writ of certiorari, Walker suffered no resulting prejudice for two reasons.

First, it is highly unlikely that the Supreme Court would have granted certiorari in Walker's case. The Supreme Court "does not sit as an error-correction instance."[70] Rather, "certiorari will be granted 'only for compelling reasons,' which

---

[69] To the extent that Walker's motion may be read as asserting that her attorney should have filed the petition on her behalf, the Supreme Court has explained that the Sixth Amendment to the United States Constitution guarantees the right to counsel at trial and "in first appeals as of right." *Halbert v. Michigan,* 545 U.S. 605, 610 (2005). The Supreme Court has therefore consistently "rejected suggestions that [it] establish a right to counsel on discretionary appeals," *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987), and has further explained that "where there is no constitutional right to counsel there can be no deprivation of effective assistance." *Coleman v. Thompson,* 501 U.S. 722, 752 (1991) (citation omitted). It is beyond cavil that defendants have no constitutional right to the assistance of counsel in filing a petition for a writ of certiorari with the Supreme Court. *Cf. Ross v. Moffitt*, 417 U.S. 600, 617 (1974) (noting that the Supreme Court "has followed a consistent policy of denying applications for appointment of counsel by persons seeking to file jurisdictional statements or petitions for certiorari in this Court"). Because Walker was not entitled to an attorney to assist her in filing a petition for a writ of certiorari with the Supreme Court, any claim of ineffective assistance of appellate counsel based upon the failure to file such a petition would fail. *See Walker v. United States*, 810 F.3d 568, 576 (8th Cir. 2016) (based on established precedent, claims of ineffective assistance of appellate counsel premised on failure to file petition for writ of certiorari fail); *United States v. Wyatt*, 672 F.3d 519, 520 (7th Cir. 2012) (holding that "the failure of [the defendant's] attorney to file a petition for a writ of certiorari in his direct appeal could not constitute ineffective assistance of counsel because a defendant has no right to an attorney in seeking review with the Supreme Court"); *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009) (concluding "the failure to file [a petition for a writ of certiorari] cannot amount to constitutionally ineffective assistance").

[70] *Halbert v. Michigan*, 545 U.S. 605, 611 (2005).

include the existence of conflicting decisions on issues of law among federal courts of appeals, among state courts of last resort, or between federal courts of appeals and state courts of last resort."[71] Accordingly, "[a] petition for a writ of certiorari is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law."[72] Walker's challenge to the leadership enhancement involves only an allegedly erroneous factual finding and, accordingly, "[i]t is unlikely that [the Supreme Court] would have granted certiorari on that question alone."[73]

Second, regardless of the fact that the alleged error is not the type of issue that would ordinarily result in the grant of certiorari, Walker's underlying claim is also without merit. It is therefore unlikely that the Supreme Court have reversed this Court and the Third Circuit's determination regarding the leadership enhancement.

In that vein, the Sentencing Guidelines provide for a four-level increase to a defendant's offense level if she was an "organizer or leader of a criminal activity that involved five or more participants."[74] "To qualify, [s]he must have 'exercised some degree of control over others involved in the commission of the offense.'"[75] "The Government must prove only that [s]he controlled at least one person within

---

[71] *City & Cty. of S.F. v. Sheehan*, 575 U.S. 600, 619 (2015) (Scalia, J., concurring in part and dissenting in part) (quoting U.S. Supreme Court R. 10).
[72] *Id.*
[73] *Id.*
[74] USSG § 3B1.1(a).
[75] *English*, 804 F. App'x at 146 (quoting *United States v. Helbling*, 209 F.3d 226, 243 (3d Cir. 2000)).

the larger scheme, not five."[76] "To decide whether a defendant was an 'organizer or leader,' . . . [courts] weigh several factors."[77] "Among them are how much 'control and authority' the defendant 'exercised over others' and whether [s]he claimed 'a larger share of the fruits of the crime' than other participants."[78]

As this Court noted at sentencing, voluminous evidence supports the notion that Walker was a leader or organizer of the conspiracy. It was Walker who knew when new heroin was available, had access to the entire customer list and associated phone numbers, and who would notify customers when new heroin was available for purchase.[79] It is highly unlikely that such information would be entrusted to a lower-level operative. Walker also consistently had knowledge of when coconspirators were arrested and had their phones seized, and she would notify her coconspirators about those events.[80]

Walker helped manage the conspiracy by discussing with other conspiracy leaders police surveillance and arrests of coconspirators.[81] Walker also made several comments on social media that indicate she was in a leadership role, including comments about employing individuals, having followers, and being a boss.[82] Finally, Walker derived significant income from the conspiracy, having deposited at

---

[76] *Id.*
[77] *Id.*
[78] *Id.* (quoting USSG § 3B1.1 cmt. n.4).
[79] Sentencing Transcript at 39.
[80] *Id.*
[81] *Id.* at 40.
[82] *Id.* at 40-41.

least $60,000 in cash into her bank account and having purchased "a fleet of at least four luxury cars."[83] This evidence led both this Court and the Third Circuit to conclude that a sentencing enhancement for being a leader or organizer of criminal activity that involved five or more people was appropriate, and there is no reasonable probability that the Supreme Court would have overturned that result. Because Walker suffered no discernable prejudice from appellate counsel's alleged failure to inform Walker of her right to file a petition for a writ of certiorari with the United States Supreme Court, this claim fails.

### B. Failure to Raise Certain Issues on Appeal

Turning then to Walker's final claim that she received ineffective assistance of appellate counsel based on counsel's failure to challenge on appeal the application of the sentencing enhancement for possessing a firearm and the failure to apply the safety valve, the Court finds that neither argument has merit.

First, any challenge to the enhancement for possessing a firearm is meritless, and certainly not "clearly stronger" than the issue presented on appeal.[84] The Sentencing Guidelines provide that, in connection with a controlled substance conviction, a two-level increase to a defendant's offense level is warranted if she possessed a dangerous weapon.[85]

---

[83] *English*, 804 F. App'x at 147.
[84] *Robbins*, 528 U.S. at 288.
[85] USSG § 2D1.1(b)(1).

That "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet."[86] For this enhancement to apply, "the Government must first prove, by a preponderance of the evidence, only that the defendant possessed a dangerous weapon."[87] There are "four factors relevant to this inquiry: (1) the type of gun involved, with clear improbability less likely with handguns than with hunting rifles, (2) whether the gun was loaded, (3) whether the gun was stored near the drugs or drug paraphernalia, and (4) whether the gun was accessible."[88]

"The burden of production then shifts to the defendant to demonstrate that the connection between the weapon and the drug offense was clearly improbable."[89] "Under this approach, then, the Government does not have to prove any relationship between the weapons and the drugs. Rather, the general rule is that the enhancement should be applied if a firearm was present."[90] "It is the defendant's burden to show the *lack* of a connection."[91]

---

[86] *United States v. Denmark*, 13 F.4th 315, 318 (3d Cir. 2021).
[87] *Id.* (internal quotation marks omitted).
[88] *United States v. Napolitan*, 762 F.3d 297, 308 (3d Cir. 2014) (ellipsis and internal quotation marks omitted).
[89] *Denmark*, 13 F.4th at 318 (internal quotation marks omitted).
[90] *Id.* (internal quotation marks omitted).
[91] *Id.*

Here, law enforcement seized two handguns from Walker's residence, and one of those firearms was fully loaded with ammunition.[92] In that residence law enforcement also recovered a customer list, along with "some of the trap phones operated by this defendant and the folks that she supervised and managed, cash, 11 cardboard boxes of blue glassine bags used to package heroin, [and] a bag of small black rubber bands used to bag up heroin packets and put them in bundles."[93]

These facts demonstrate that all four factors are present that are relevant to determining whether Walker possessed a dangerous weapon: she possessed handguns, at least one of which was loaded; those firearms were stored in the same house as drug paraphernalia; and the firearms were accessible to her.[94] Although Walker attempted to undercut the credibility of one of the witnesses who connected Walker to firearms,[95] she could not convincingly undercut the evidence that handguns were recovered from her residence and that those firearms were in close proximity to drug paraphernalia. Given the failure to rebut the strong evidence that Walker possessed a firearm in connection with her drug trafficking offense, her claim that the sentencing enhancement was improperly applied is without merit, and appellate counsel did not perform deficiently in failing to raise that issue on appeal in lieu of a stronger claim, nor did Walker suffer any resulting prejudice.

---

[92] Sentencing Transcript at 34.
[93] *Id.* at 17.
[94] *Napolitan*, 762 F.3d at 308.
[95] Sentencing Transcript at 9-10.

Finally, the Court cannot conclude that appellate counsel performed deficiently in failing to raise on appeal issues related to the application of the safety valve, nor was Walker prejudiced by said failure. The Sentencing Guidelines provide that a defendant is eligible for a reduction in her offense level if she meets five enumerated criteria, among which are the requirements that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense" and that she "was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines."[96]

Given that the Third Circuit determined that Walker "sat at or near the top of a wide-ranging, sophisticated heroin-trafficking conspiracy"[97] and directed "at least eight coconspirators who sold heroin to her trap-phone contacts,"[98] and that this Court "properly enhanced" her sentence for possessing a dangerous weapon,[99] any argument presented to the Third Circuit related to the safety valve would have unquestionably been rejected, as two separate provisions barred the application of the safety valve.[100] Consequently, this claim is also without merit.

---

[96] USSG § 5C1.2(a).
[97] *English*, 804 F. App'x at 148.
[98] *Id.* at 147.
[99] *Id.* at 148.
[100] USSG § 5C1.2(a).

### C. Certificate of Appealability

Because the Court will deny Walker's § 2255 motion, this decision is not appealable unless this Court or a circuit justice issues a certificate of appealability.[101] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[102] To satisfy this standard Walker must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claim is debatable or wrong.[103] The Court finds that Walker has not met this burden, and therefore declines to issue a certificate of appealability.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Walker's claims are without merit. Accordingly, Walker's 28 U.S.C. § 2255 motion will be denied, and the Court will deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[101] 28 U.S.C. § 2253(c)(1)(B).
[102] *Id.* § 2253(c)(2).
[103] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).